## COHEN v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2818.

Allan H. Fisher, of Baltimore, Md. (Joseph M. Schlessinger, of Baltimore, Md., on the brief), for petitioner.

Millar E. McGilchrist, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key and Randolph C. Shaw, Sp. Asst. Attys. Gen., and C. M. Charest, Gen. Counsel, and Shelby S. Faulkner, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before WADDILL and PARKER, Circuit Judges, and McDOWELL, District Judge.

PARKER, Circuit Judge. This is a petition to review a decision of the Board of Tax Appeals which upheld the action of the Commissioner of Internal Revenue in assessing against one Louis Cohen, hereinafter called the taxpayer, deficiencies in income taxes for the years 1920 and 1921. There is no dispute as to the facts, which may be briefly stated as follows:

■ Taxpayer is the owner of a wholesale wall paper business in the city of Baltimore. He owns also a one-third interest each in partnerships engaged in that business in Baltimore and Washington and one-third of the stock of a corporation so engaged in Richmond, Va. His three sons, Samuel, Jacob, and Benjamin, have been working for him in the business for a number of years. Their services are of great value to him, not only because of their industry and interest in the business, but also because taxpayer is unable to read or write and therefore depends upon their fidelity to an extent greater than would otherwise be necessary. With the aid of these sons, taxpayer has built up a large business and naturally desires to retain their services and keep alive their interest in its progress and development. With this end in view, he entered into a contract with them in the year 1919 to pay them additional compensation for their services under terms and conditions which have given rise to this controversy.

This contract began with a recital that taxpayer was desirous of making the employment of his sons as attractive as possible and of fostering their interest in the business, and that it was his desire that the inducements and interests given them, "in consideration of their services and efforts," should inure to their benefit at certain times as provided in the contract. The consideration set forth was the foregoing recital in the premises and the promise and agreement on the part of the sons "to continue their active work and interest for the continuous welfare and prosperity of the business and interests built up by said Louis Cohen from very small beginning and to insure a continuance of said business and allied interests by binding said

sons to said business." It provided that taxpayer should pay to each of his sons 25 per cent. of the net amount which he might receive annually from his interest in the partnerships and the corporation above referred to, which should not be paid to them forthwith, but should be credited to each upon the books, and held in trust for him until he should marry or arrive at the age of 35 years, when it should be paid to him with interest at the rate of 3 per cent. per annum.

The contract further provided that upon marriage the sons should marry girls of Jewish faith and parentage, subject to the approval of taxpayer and his wife, and that, if the taxpayer should deem the conduct of any of his sons unsatisfactory in and about the business, or if he or his wife should object to the bride selected by any of his sons, a board of arbitrators should be chosen who should determine whether the son in question had performed the conditions and agreements of the contract. If the arbitrators should decide adversely to the son, his interest in the further income derived from the partnerships and corporation should cease; but in that event the funds already placed to his credit were not to be forfeited, but to be held in trust for him until the time should arrive when they were payable to him under the contract, i. e., upon marriage or arrival at the age of 35 years, when they were to be paid to him with interest. The contract concluded with the following paragraph:

"The special inducement and interest hereinbefore provided by said Louis Cohen, for his said sons, is not made solely for the purpose of accelerating the interest in his business by the said sons, for pecuniary reasons alone, but because it is the heartfelt desire of said Louis Cohen that the large business and the name he has established in the wall paper business may be continued by his sons as a monument to the genius of the father, who through poverty and adversity, by unfailing zeal and hard labor, established the business and allied enterprises and made the name of Louis Cohen a by-word in the wall paper business."

The Board of Tax Appeals, after finding the execution of this contract, found the other facts of the case as follows:

"The circumstances under which the agreement was executed were that the three sons, at that time, had been in the petitioner's employment for from four to nine years. Samuel was receiving $4,000 a year, Benjamin and Jacob were each receiving $25 a week. Samuel, the oldest son, attended to the advertising; all three sons assisted their father, who could neither read nor write, in selecting manufacturer's samples and in compiling sample books for use in the jobbing trade of the petitioner. While their time was primarily spent in Baltimore with the National Wall Paper Company, their efforts were also directed to the advantage of the two partnerships and the corporation in which the petitioner was interested. The sons were dissatisfied with the compensation they were receiving and demanded more money. As a result the agreement above was executed.

"After the agreement was executed, and in the years 1920 and 1921, the petitioner credited the individual accounts of each of his three sons with 25 per cent. of the earnings of interest in the partnerships and the corporation and notified the sons of the amounts. In making financial statements to his banks in 1920 and 1921, the petitioner included the amounts credited to the sons as a liability on his part, but he also listed among his assets the value of his interest in the two partnerships and the corporation. He made similar reports to the mercantile agencies. One of the sons married after 1921 and withdrew the amount standing to his credit on the petitioner's books, including the amounts credited in 1920 and 1921.

"The petitioner's business increased materially in 1919 and 1920, and it would have been impossible for the petitioner to conduct the business without the assistance of the sons, or of some one to take their places. The sons were very active in the business and often worked at night. The amounts credited to the sons on the books of the petitioner during the years 1920 and 1921 were not returned as income by the petitioner."

On the hearing before the board the taxpayer offered to prove that each of his sons duly reported as income for the years in controversy the sums credited to him under the provisions of the contract, but this testimony was excluded. There was no finding and no evidence to justify a finding that the agreement was made in bad faith or in an attempt to evade the tax laws. On the contrary, it appears to have been made and carried out in good faith.

Upon these facts, we think it is perfectly clear that the share of the income credited to each of the sons under this contract constituted additional compensation for services rendered to the taxpayer, and as such was a proper deduction from the gross income of the latter. And, as the right of each son to

his share of the income under the contract was absolute, except for breach of conditions, we think also that, when such share was received and properly credited to him and became irrevocably his, it was his gain or income, and not that of his father, 'and was taxable accordingly.

In the first place, the contract shows that what the sons were to receive thereunder was additional compensation for the services which they were rendering to their father. The amounts which he was paying them were small as compared with the income which he was deriving from the business which they were helping him build up. They were dissatisfied, and were demanding additional pay. He agreed to divide with them the income which he was receiving from the partnerships and the corporation, provided they would continue on in the business, drawing the same weekly or annual pay, and would agree that the extra compensation be held in trust for them until their arrival at the age of 35 or prior marriage, a provision obviously intended to foster thrift on their part. There is no evidence that the extra compensation was unreasonable in amount as compared with the value of their services, and certainly it was not unreasonable when consideration is given to the fact that it was not to be payable until after the lapse of a considerable period of time. It was not forfeitable by the father; for, although he might stop further compensation to any of his sons, if the services of such son proved unsatisfactory, or if he married a girl of whom his parents did not approve, this did not forfeit the compensation already earned and credited, but only the compensation for the current and future years. We think, therefore, that what was credited to the sons under the contract was allowable as a deduction from gross income under section 214 of the Revenue Laws (Revenue Acts 1918 and 1921; 40 Stat. 1066; 42 Stat. 239) as an "ordinary and necessary expense" of the business of taxpayer, being a reasonable allowance for compensation paid for services actually rendered.

We think that the board attached entirely too much importance to the marriage provision of the contract. It is true that marriage is a personal matter and has nothing to do with the services rendered by the sons. But, as just stated, breach of the marriage condition did not forfeit the extra compensation already earned. The father was providing a means by which he could get rid of a son's future connection with the business, if he should do that which was personally objec-

tionable to his parents, in the same way as if he should fail to render satisfactory service. The provision that marriage to a Jewish girl, approved by the parents, would hasten the payment of the funds held in trust, was no more than a provision that, upon a marriage deemed proper by his parents, his savings should be paid to him, instead of being withheld until his arrival at 35 years of age. The amount credited to the sons under such a contract was clearly not a gift or a "personal, living or family expense" within the meaning of Revenue Acts 1918 and 1921, § 215 (40 Stat. 1069; 42 Stat. 242), but compensation for services actually rendered in the business of the father. That it was to be paid in such way as to encourage thrift and saving on the part of the sons did not change its character. Nor was its character changed by the fact that future compensation might be forfeited by unsatisfactory conduct or marriage.

It is argued that whether a claimed deduction constitutes an "ordinary and necessary" expense within the meaning of the statute is a question of fact, that the board has determined this question adversely to the taxpayer, and that we are bound by its findings. We do not think, however, that it has adversely determined the fact. It has made no such determination in the findings of fact, which we have quoted in full, and the statement to that effect in the opinion is obviously a conclusion drawn from the previous statement that the taxpayer desired that his sons should marry girls of Jewish parentage, and that to accomplish this result the agreement of January 1, 1919, was entered into. In other words, what is relied upon as a finding of fact is no more than a conclusion, based upon an erroneous interpretation of the contract. It is said, however, that, if this finding has not been made by the board, it is a finding which must be made before the taxpayer can prevail, and that the case should either be affirmed for failure of the board to make it, or remanded that the question involved may yet be passed upon. But we think 'that the board has fully found the facts, and that it is a necessary inference from them that the sums credited to the sons were ordinary and necessary expenses of the taxpayer, within the meaning of the statute, and that such inference may be held to result as a conclusion of law. Botany Worsted Mills v. U. S., 49 S. Ct. 129, 132, 73 L. Ed. ——; U. S. v. Pugh, 99 U. S. 265, 269, 25 L. Ed. 322.

But, quite apart from the question as to

whether the share of the income to which the sons were entitled under the contract was reasonable allowance as compensation for the services or not, we are satisfied that it constituted income taxable against them and not against their father. The contract in question was a valid, binding contract made upon a sufficient consideration. It was terminable for breach of condition, but until terminated each of the sons was entitled thereunder to a definite part of the income from the partnerships and the corporation in question, to be held in trust for his use and benefit, and to be paid to him at a definite future time. There can be no question, therefore, that, as soon as the income was paid to the father, each of the sons, by virtue of the contract, became the equitable owner of one-fourth of it, to be held for him under the provisions of the contract. See Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530. When the income was received and credited to the sons, therefore, this did not constitute gifts to them during the current year, but the carrying out of the contract and the crediting to them of that which was theirs.

If the taxpayer had given to his sons a one-fourth interest in his business, so as to constitute them partners, there would be no question that their shares of the income of the partnership would have been taxable against them, and not against their father. Instead of giving them a share in the business, he has contracted that they shall have a share of the income as additional compensation for their services. When this income is received, as stated above, the shares of the sons therein belong to them in equity. They do not inure to the benefit or enrichment of the father, but to their benefit, and should be taxed accordingly.

It is said that the decision in Mitchel v. Bowers (C. C. A. 2d) 15 F.(2d) 287, supports the decision of the Board of Tax Appeals. We do not think so. In that case a husband, entitled to 51 per cent. of the profits of a partnership, entered into a contract with his wife by which she became entitled to one-half of the profits which might come to him from the partnership, and liable for one-half of the losses which he might sustain by reason thereof. Settlements were to be made annually, and it was stipulated that either party might terminate the contract at any time. The court held that this provision put the disposition of the profits always within the power of the husband, and that, even where the wife had received profits, there was necessarily involved the exercise of an option on the part of the husband to allow them to pass to her. There was no element there of the share of the income being paid by way of compensation. Here, however, there is present the element of compensation, and, in addition, the taxpayer has parted with the right to control the shares of the income to which the sons are entitled under the contract. So long as there is no breach of condition on their part, they can demand that their respective shares of this income be credited to and held for them.

For the reasons stated, our conclusion is that the board erred as a matter of law in holding, upon the facts as found by it, that the Commissioner was entitled to assess against the taxpayer the deficiencies in question. The decision of the board is accordingly reversed.

Reversed.

McDOWELL, District Judge, dissents.