## MERCHANTS' TRANSFER & STORAGE CO. v. BURNET, Com'r of Internal Revenue.

### No. 3050.

Circuit Court of Appeals, Fourth Circuit. April 13, 1931.

Robert A. Littleton, of Washington, D. C. (Mason, Spalding & McAtee, of Washington, D. C., on the brief), for petitioner.

J. P. Jackson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen.; and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

NORTHCOTT, Circuit Judge.

This is a petition by the Merchants' Transfer & Storage Company, a corporation under the laws of the state of Delaware, with its principal office and place of business in Washington, D. C., to review a decision of the United States Board of Tax Appeals. The first assignment of error dealt with the question whether the board erred in holding that the deficiency in the tax for 1917, as determined by the Commissioner, was not barred by the Statute of Limitation. Since the bringing of this appeal this question has been settled by the Supreme Court of the United States in the cases of Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. ——, and Brown & Sons Lumber Co. v. Burnet, Commissioner of Internal Revenue, 282 U. S. 283, 51 S. Ct. 140, 75 L. Ed. ——, both decided January 5, 1931, and the point raised by this assignment of error was not urged before us.

The second question raised is that the board erred in holding that the petitioner was not entitled to the allowance of a deduction for amortization of the cost of the erection of a building by petitioner in Washington, subsequent to April 6, 1917, and used by the government of the United States as a facility for the production of articles contributing to the prosecution of the war, and that the findings of fact by the board, in reference to the right of petitioner for such allowance, are not supported by any evidence, and are contrary to the evidence given in the hearing before the board.

The petitioner operated a transfer and storage business in the city of Washington, and in this business used a number of automobiles. In August, 1917, petitioner needing additional garage facilities, entered into a contract for the construction of a reinforced concrete type garage building, three stories in height, provision in foundation for an additional three stories, and the evidence showed that petitioner had gotten estimates as to the cost of carrying the building to three or four extra stories. When petitioner started the erection of the building, representatives of the government of the United States approached officers of the petitioner with a view to getting them to construct a six-story building that would be suitable for the purposes of the government in the production of articles contributing to the prosecution of the war. In November, 1917, the three-story building, originally contracted for, was about completed, and because of the negotiations of the government of the United States, it was decided by petitioner's officers to add three additional stories, making the building a six-story building. The original three stories were constructed for use as a garage building; the additional three stories being of a factory type.

The War Department of the United States Government took possession of the building in January or February, 1918, and occupied the same, with the Field Ordnance Department, for the purpose of assembling traveling machine shops to be used in construction and repair work in the various cantonments, where soldiers were being trained. The six-story building was completed in April, 1918, and at that time the government had leased said building at the rate extremely remunerative to the petitioner as compared to the cost of the building. The government continued in possession of said six-story building, using it for various purposes in connection with the prosecution of the war, until the early part of the year 1920. The cost of the building was $89,407.42, and the rental, originally agreed to be paid by the government, was $33,750 per annum, and although the rental was shortly reduced, the petitioner profited by the rent collected in the time the government had the building under lease to an amount equal to more than half of the cost of the construction of the building.

The Commissioner of Internal Revenue found that the petitioner was not entitled to any deduction for amortization, and the Board of Tax Appeals sustained the finding of the commissioner.

Section 234 (a) (8) of the Revenue Act of 1918 (40 Stat. 1057, 1077, c. 18) provides as follows:

"(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

58

"(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income. At any time within three years after the termination of the present war the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the taxes imposed by this title and by Title III for the year or years affected shall be redetermined and the amount of tax due upon such redetermination, if any, shall be paid upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 252."

The evidence before the board shows that officers of the petitioner contemplated an erection of a six-story building for their use in the business of petitioner before the government entered into negotiations with regard to leasing. This is shown by the securing of the estimates of the cost of constructing a six-story building, and on March 19, 1918, while negotiations for the lease for the government was under way, the following resolution was passed by the board of directors of petitioner:

"Resolved: That although to deprive the Company of the use of the new building for the purposes for which it was constructed would interfere with the economical operation of the new business and entail substantial loss to the Company, the President is hereby authorized to rent the new six-story fireproof building, rear 920–922 E Street, N. W. to the Ordnance Department of the War Department on the following terms:

"The rental to be at the rate of $33,750.00 per annum.

"The operation of the building to be at the expense of the United States Government.

"The taxes and insurance to be paid by the Merchants Transfer & Storage Company.

"Any alterations, changes, etc., if needed, to be made at the expense of the Government.

"The lease is to be effective from April 1, 1918, to June 30, 1918, with the privilege of renewal at the same rate for a further period of one or two years."

The burden devolves upon the petitioner to show that the decision of the Commissioner of Internal Revenue was erroneous, as the legal presumption is in favor of the correctness of the commissioner's action. Guarantee Bond & Mortgage Co. v. Commissioner of Internal Revenue (C. C. A.) 44 F.(2d) 297, and cases there cited; Burnet, Commissioner, v. Sanford & Brooks, 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. ——, decided by U. S. Supreme Court, January 5, 1931.

That the finding of the Commissioner is prima facie correct has been held by this court in a number of instances. Anchor Co., Inc., v. Commissioner of Internal Revenue (C. C. A.) 42 F.(2d) 99, and cases there cited. See, also, Brooks v. Commissioner of Internal Revenue (C. C. A.) 35 F.(2d) 178.

Moreover, it is well settled that findings of the Board of Tax Appeals, supported by evidence, will not be disturbed on appeal. We know of no contrary authority on this proposition, and this finding has been repeatedly made by this court. Ox Fibre Brush Co. v. Blair, Commissioner of Internal Revenue (C. C. A.) 32 F.(2d) 42, 68 A. L. R. 696; Atlantic Coast Distributors v. Commissioner of Internal Revenue (C. C. A.) 33 F.(2d) 733; Guy v. Commissioner of Internal Revenue (C. C. A.) 35 F.(2d) 139; Anchor Co., Inc., v. Commissioner of Internal Revenue (C. C. A.) 42 F. (2d) 99.

In appeals from the decision of the Board of Tax Appeals the courts are limited to a review of the questions of law where there is substantial evidence to sustain the findings of fact. Lucas, Commissioner, v. Mercantile Trust Co. (C. C. A.) 43 F.(2d) 39, and cases there cited.

The record shows that petitioner entered upon the construction of the building in question for use in its own business, and the resolution of petitioner's board after the building was practically constructed supports this theory, and while the petitioner may have been induced to alter the plans with respect to the building in some degree,

such change in the plans was evidently for the purpose of securing a profitable contract of lease from the government. The petitioner has not sustained the burden of showing that the action of the commissioner was erroneous, and no matter what would have been our conclusion upon the evidence before the Board of Tax Appeals, there was unquestionably substantial evidence to support the finding of fact, by the board, that the building was not constructed for the production of articles contributing to the prosecution of the war.

It therefore follows that the action of the Board of Tax Appeals is affirmed.