### GOSSETT v. COMMISSIONER OF INTERNAL REVENUE (two cases). *
### Nos. 3276, 3277.

Circuit Court of Appeals, Fourth Circuit.
June 13, 1932.

*For opinion denying rehearing, see —- F.(2d) —-.

James Craig Peacock, of Washington, D. C. (John W. Townsend, of Washington, D. C., on the brief), for petitioners.

John H. McEvers, Sp. Asst. to the Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and O. J. Tall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before NORTHCOTT and SOPER, Circuit Judges, and WAY, District Judge.

NORTHCOTT, Circuit Judge.

These are petitions to review decisions of the Board of Tax Appeals, approving a finding of deficiencies by the Commissioner of Internal Revenue, against petitioners for the year 1926 (22 B. T. A. 1279). The points involved being the same in both cases, they were consolidated and heard together.

Petitioners are individuals residing at Williamston, S. C. During 1925 they were shareholders in Brogon Mills, a South Carolina corporation, engaged in the manufacture of cotton fabrics. The mills had then been in existence twenty-five years.

On September 10, 1925, the board of directors of the Mills passed a resolution calling for a shareholders' meeting to be held on October 13th following, for the purpose of considering certain offers made for the purchase of its assets, and also for considering a resolution recommended by the directors authorizing "said Brogan Mills to go into liquidation and wind up its affairs and dissolve." At the same meeting the board of directors voted "that the regular quarterly cash dividend of 2 per cent. be paid on October 1, 1925, to all stockholders of record September 25, 1925."

At the shareholders' meeting on October 13, 1925, resolutions were passed authorizing the sale of the mills on certain conditions as to brands and trade-marks for the sum of $1,100,000, and further authorizing the directors, in the event of sale, to take the necessary steps to dissolve the corporation. On November 2, 1925, the sale was carried out as set forth in the minutes, and the purchase price paid.

On December 15, 1925, the mills' board of directors voted "that a cash dividend of fifty per cent. (50%) be paid out of surplus on December 21, 1925, to all stockholders of record on December 15, 1925." When this dividend totalling $660,800 was declared and paid, the capital stock of the mills amounted to $1,321,600 divided into shares of the par value of $100. On December 1, 1925, the mills' books showed a surplus of $831,936.81; on January 1, 1926, a surplus of $135,432.26. This dividend was paid out of the cash received as the purchase price.

During 1926 the board of directors of Brogon Mills declared a "liquidating dividend" of $50 a share payable January 25 to all shareholders; of 25 per cent. payable March 25 to all shareholders; of 10 per cent. payable May 20 to all shareholders; of $10 payable August 2 to shareholders other than the machinery group; of $5 payable December 20 to shareholders other than the machinery group; and in 1929 of $8.23 payable April 1, 1929, to shareholders other than the machinery group; and of $2 payable when available to all. After the declaration of January 2, 1926, of the dividend payable January 25, all shareholders were advised by letter to surrender their stock certificates to the Hanover National Bank of New York City which was in charge of the disbursement of this and subsequent liquidating dividends. All of said dividends were paid. On December 7, 1927, the "resolution of dissolution was executed," and on December 9, certified to by the secretary of state of South Carolina.

The only question involved is whether the dividend of 50 per cent. declared on December 15, 1925, and paid on December 21, 1925, was a dividend paid "out of its earnings or profits accumulated after February 28, 1913," or was an amount "distributed in partial liquidation" of the corporation. If it was a "liquidating dividend," the action of the Commissioner in determining a deficiency against the petitioners for the year 1926 in their income taxes was correct.

It is not necessary to set out here the statutes and regulations involved, as it is admitted on behalf of the petitioners that, if the dividend in question was a "partial liquidating dividend," petitioners' case falls.

The law is now well settled with respect to certain principles that govern appeals of this character. See Atlantic Bank & Trust

Co. v. Commissioner (C. C. A.) 59 F.(2d) 363, decided on this date.

 The determination of the Commissioner is prima facie correct, and can only be reversed by the Board of Tax Appeals upon evidence; the burden was on the petitioners to establish the fact that the determination of the Commissioner was erroneous; the Board is a fact-finding body, and this court cannot substitute its judgment for that of the Board.

A discussion of the question directly involved here will be found in Hellmich v. Hellman, 276 U. S. 233, 48 S. Ct. 244, 245, 72 L. Ed. 544, 56 A. L. R. 379, where Mr. Justice Sanford says:

"The controlling question is whether the amounts distributed to the stockholders out of the earnings and profits accumulated by the corporation since February 28, 1913, were to be treated under section 201 (a) as 'dividends,' which were exempt from the normal tax; or, under section 201 (c) as payments made by the corporation in exchange for its stock, which were taxable 'as other gains or profits.' * * *

"The gains realized by the stockholders from the distribution of the assets in liquidation were subject to the normal tax in like manner as if they had sold their stock to third persons."

See, also, Langstaff v. Lucas (C. C. A.) 13 F.(2d) 1022.

 Here the earnings of the corporation for the fiscal year ending August 31, 1925, amounted to $132,030.96 before making allowances for dividends or Federal taxes. The company appears to have paid an 8 per cent. dividend, or $105,728. The amount of the federal taxes does not appear. This was the "regular" dividend. Shortly after the extraordinarily large 50 per cent. dividend was paid out of the money received for the sale of the corporation. Certainly at the time of the payment of the dividend in question the corporation was not a going concern, in the legal sense, as its dissolution was already under way. It makes no difference what the directors called it when the dividend was declared, nor does the fact that subsequent dividends were termed "liquidating" dividends when this particular dividend was not so termed alter its character. The question of whether it was a "partial liquidating dividend" is to be determined, not from what it was called, but by the facts as shown by the record. The record shows that it was a very unusual dividend, and entirely outside of the due course of the business of the corporation.

The decision of the Commissioner and the Board that it was a "partial liquidating" dividend was clearly right, and petitioners were properly chargeable in their income tax with the amount of the dividend "as if they had sold their stock to third persons."

The decisions of the Board of Tax Appeals are affirmed.