## NORFOLK NAT. BANK OF COMMERCE AND TRUSTS v. COMMISSIONER OF INTERNAL REVENUE (two cases).

### Nos. 3456, 3457.

Circuit Court of Appeals, Fourth Circuit. June 15, 1933.

NORTHCOTT, Circuit Judge, dissenting.

Hugh W. Davis and William L. Parker, both of Norfolk, Va., for petitioner.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

These cases involve income taxes for the years 1924 and 1925 assessed against the Norfolk National Bank of Commerce and Trusts, on account of income received by it, or by the Norfolk National Bank, its predecessor. Interest received in the taxable years was reported by the taxpayer in its returns, but was not included in its computation of gross income on the ground that the interest was derived from obligations of a state or a political subdivision thereof, exempt under section 213 of the Revenue Act of 1924, 43 Stat. 253, 267 (26 USCA § 954 and note), and section 213 of the Revenue Act of 1926, 44 Stat. 9, 23 (26 USCA § 954). This section, which is in the same words in both acts, provides that the term "gross income" shall not include interest upon the obligations of a state, or any political subdivision thereof, and requires every person, owning any such obligations, to submit in his return a statement showing the number and amount thereof, and the income received therefrom. The Commissioner determined that the amounts in question were interest on the obligations of private corporations or private individuals, and were therefore taxable, and this conclusion was approved by the Board of Tax Appeals.

The controversy grows out of the peculiar manner in which the commonwealth of Virginia has borrowed money for the building of roads. A proposal to issue its bonds and use the proceeds for the immediate construction of roads was rejected at a special election in 1923, held under the authority of chapter 146 of the Acts of the Extra Session of the General Assembly of 1923, and it was determined to finance the cost from current revenues. This plan was modified to some extent, how-

ever, by the enactment in 1924 by the General Assembly of an amendment to the Robertson Act (Acts 1920, c. 184, Acts 1924, c. 447), which provided that, if any county, district, city, town, private corporation, or person desired to reconstruct any section of road in the state highway system, and to advance to the state the money necessary for the construction, the state highway commission should have authority to enter into agreements with any of such parties for receiving the money and proceeding with the construction, and for the repayment of the money, provided that the state should not be obligated to pay interest on the money so advanced except from and after four years from the time that the money should be received by the state; after which interest on the principal remaining unpaid at the rate of 4½ per cent. annually might be paid.

The statutes of Virginia, by other provisions, also empowered incorporated cities to aid in the building of public roads. The legislative charter of the city of Norfolk (Acts 1918, c. 34, § 2 (12), enacted by the General Assembly in 1918, in conformity with the Constitution of the state (article 4, § 65), empowered the city to construct and maintain public roads beyond the limits of the city in order to facilitate public travel to and from the city; and the general assembly in 1918 passed an act (Acts 1918, c. 270, § 1), enabling incorporated cities to contribute to the building or improvement of public roads leading to such cities when, in the judgment of the council or governing body, such action would tend to promote the material interests of the city.

The council of the city of Norfolk, acting in pursuance of these statutes, adopted on June 27, 1922, an ordinance whereby it obligated itself to pay the interest, not exceeding 6 per cent. per annum, on the sum of $260,000, to build ten miles of road in the Ridge Route, between Suffolk and Franklin, in the state of Virginia, said funds to be advanced to the state highway commission by such corporations as might be formed for the purpose under the Robertson Act. On the same day, the Ridge Route Corporation was incorporated, for the purpose of handling the immediate financing of such road construction, with the assistance of the city of Norfolk. On June 29, 1922, the Ridge Route Corporation entered into a contract with the state highway commission of Virginia, whereby the corporation agreed to advance $260,000 to the commission, to be expended in the construction of the road, and the commission agreed to repay the advances, without interest, annually as funds were available therefor.

On February 24, 1923, a group of banks, of which the taxpayer was a member, advanced to the state highway commission the said sum of $260,000. On the same day an agreement was made by the city of Norfolk and the Ridge Route Corporation, whereby the city promised to pay to the corporation, its successors or assigns, interest on said sum of $260,000 at the rate of 6 per cent. per annum. This agreement recited the previous agreement between the Ridge Route Corporation and the state highway commission, and the advancement by the corporation to the commission of the sum of $260,000 on February 24, 1923.

On the same day, the Ridge Route Corporation made an indenture running to the Trust Company of Norfolk, as trustee, whereby it granted and assigned to the trustee all its right, title, and interest in the contract between the corporation and the state highway commission, and in the contract between the corporation and the city of Norfolk, hereinbefore referred to, and gave to the trustee full power and authority to enforce all rights given to the corporation by these contracts to the same extent as if they had been originally made with the Trust Company as trustee, and particularly the right to receive, collect, and give full receipts for any moneys which might become due to the corporation under either of the contracts. It was expressly declared, however, that the grant and assignment was made in trust to secure the payment of the principal and interest of the sum of $260,000 to the holders of forty-eight promissory notes of the Ridge Route Corporation of divers amounts aggregating that sum, payable to bearer on demand, with interest at the rate of 6 per cent. per annum, at the Trust Company of Norfolk. The trustee was given the right, in case of default in the payment of the debt or of the interest, at the request of a majority of the holders of the notes, to sell the property and rights at public auction, and to use the proceeds to pay the principal and interest of the debt; and the trustee was given power to collect any sum that might be due to the Ridge Route Corporation, its successors or assigns, under either contract; provided, that the trustee should apply the sums received from the state highway commission toward the payment of the principal amount evidenced by the notes and the amounts received from the city of Norfolk toward the payment

of the interest on the notes. The agreement further provided for the filing of copies of the indenture with the state highway commission and with the city of Norfolk, as an authority and direction of the Ridge Route Corporation to the state highway commission and the city of Norfolk to make the payments provided by the contracts to the trustee, and to treat and deal with the trustee as the owner of the contracts entitled to all the rights and privileges therein granted to the Ridge Route Corporation, its successors or assigns. These promissory notes were held by the banks in amounts corresponding with their advances to the state highway commission.

Similar transactions took place with reference to a loan to the state highway commission by a group of banks, including the taxpayer, of $100,000 for a road between Lee Hall and Williamsburg, and $74,000 for a road btween Carrsville and Franklin, the only differences being that the contracts were made with the Peninsula Highway Corporation, and the interest was paid by the city of Norfolk, in the first case, and the contracts were made with a group of citizens and the interest was paid by the county of the Isle of Wight, in the second case.

Since the several agreements and assignments were made, the state of Virginia has paid to the trustee the principal sums advanced, and the city of Norfolk and the county of Isle of Wight have paid the interest thereon, said payments being made in accordance with the assignments. Immediately upon the receipt of the several payments from the state and the city and the county, the trustee deposited the funds in its banking department, and issued its own checks against these funds to each bank participating in the loans to the state highway commission in proportion to its participation.

For convenience, we shall consider in the following discussion only the loan of $260,-000 because the circumstances of the other loans were substantially similar, and the substitution of a group of persons in place of a corporation in connection with the loan of $74,000 is without legal significance in this connection. It is manifest that the form which these transactions took was due in large part to the unusual circumstance that the principal of the debt was payable by one party, and the interest by another; and that the underlying purpose was to enable the state to borrow money from the general public for road construction and to furnish to the lenders evidence of the indebtedness and security for its repayment. The similarities to the ordinary case of money borrowed by a state government on its bonds are apparent, the chief distinction being that, in the usual practice, the state promises by its bonds and the attached coupons to pay principal and interest to the bearer, whereas here the principal and interest were paid by different parties to a trustee, which had agreed to collect the money and pay it to the lenders.

The interposition of the trustee and of the corporation, the grantor in the deed of trust, was the circumstance on which the Board of Tax Appeals based its decision. It reached the conclusion of law that the loans were made by the Ridge Route Corporation to the state, that the promises of the state highway commission and the city to pay principal and interest respectively were given to the corporation, and that the taxpayer did not hold state or city obligations, but only the obligations of a private corporation. Hence it was held that the interest received by the taxpayer was not exempt from taxation.

■■ In order to reach this conclusion, the Board rejected as incredible the fact, stipulated by the parties to be true, that the sum of $260,000, representing the principal of the loan, was advanced by the banks to the state highway commission. The reason given by the board was that in the contract of June 29, 1922, between the Ridge Route Corporation and the state highway commission, the corporation agreed to advance the money to the commission, and in the agreement of February 24, 1923, between the corporation and the city of Norfolk, it was recited that on that day the corporation had advanced the money to the commission. The Board said that it was "to incongruous for belief" that the banks should have advanced the money directly to the commission while the legal rights and obligations involved in the loan were fixed by contracts to which the banks were not parties. This conclusion does not follow from the admitted facts. We are bound in cases of this kind to accept the facts found by the Board, and also any inferences of fact which may fairly be drawn therefrom, provided that such facts and inferences are supported by legally sufficient evidence. Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289. But the Board on its part is bound to accept as true the facts stipulated by the parties, and, if it fails to do so, and makes a finding contrary to the evidence or the necessary inferences therefrom, it commits an error of law which the court has power to correct. Cohen

v. Commissioner (C. C. A.) 31 F.(2d) 874; Ox Fibre Brush Co. v. Blair (C. C. A.) 32 F.(2d) 42, 68 A. L. R. 696; Iowa Bridge Co. v. Commissioner (C. C. A.) 39 F.(2d) 777; Lewis v. Commissioner (C. C. A.) 47 F.(2d) 32. The stipulation that the money was paid by the banks to the state highway commission is controlling in this case, and the literal inconsistency thereof with the recitals of the contracts presents no difficulty, since it clearly appears from a consideration of all the documents that the banks in fact made the loans which the corporation had agreed to make, and were themselves protected by the contemporaneous assignment of all the rights of the corporation under the contracts to a trustee charged with the power and duty to collect the principal and interest of the loan, and pay them over to the lenders.

■■ Bearing these facts in mind, the case appears in its true light. The Ridge Route Corporation was obviously formed and operated merely as an agency to facilitate the borrowing of money by the state. So far as the evidence shows, it had no funds of its own, and neither made nor received any loans. The notes which it issued were not given for money loaned to it, but for money loaned to the state, and hence they partook of the nature of accommodation paper executed by one who got no benefit from the transaction not shared by the entire community. They were given merely to indicate the extent to which each bank participated in the loan. The contracts between the corporation on the one hand and the state and the city on the other were executed to evidence the obligations of these bodies to repay, with interest, the money to be borrowed. The corporation secured for the state from the banks the money which it needed to construct the roads, and furnished to the lenders the evidence of their loans; and, having thus accomplished the purpose for which it was created, it assigned its entire interest in the contracts to a trustee, and directed it to collect the principal and interest of the debt and pay them directly to the holders of the notes. The assignment was made because the banks performed the corporation's promise to the state highway commission to advance the needed money. Nominally the obligations were assigned as security for the payment of the notes, but actually the assignment was unconditional and the legal consequence was an absolute appropriation of the state's and city's obligations to the lending banks. See Ætna Indemnity Co. v. Ladd (C. C. A.) 135 F. 636. Thereby the corporation divested itself of the right to collect the money, and the obligations of the state and the city were as effectually transferred to the banks as if a coupon bond, payable to bearer, had passed from hand to hand.

The situation was the converse of that described in First National Bank in Wichita v. Commissioner (C. C. A.) 57 F.(2d) 7, where the legal title to municipal bonds, transferred to the taxpayer bank as security for loans made by it, was held by the bank; but nevertheless it was decided that the interest collected by the bank on the loans was not exempt from income tax, because, under the arrangement between the parties, the coupons from the bonds were treated as the property of the borrower. The established rule in applying the income tax laws is that regard should be had to substance rather than to form; and cases abound in which the courts have declared that the nominal must give way to the actual situation in order that the spirit of a taxing statute may prevail. Weiss v. Stearn, 265 U. S. 242, 254, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520; Bowers v. Lawyers' Mortgage Co., 285 U. S. 182, 188, 52 S. Ct. 350, 76 L. Ed. 690; Schoenheit v. Lucas (C. C. A.) 44 F.(2d) 476, 479. So we conclude that in reality the banks, and not the corporation, lent the money to the state, that the notes of the corporation were issued merely to indicate the extent of each bank's participation in the transaction, and that the banks, and not the corporation, were the owners of the state and city obligations when the interest was paid.

■■ It is not denied by the appellee that Congress is without power to impose a tax upon the obligations of a state issued in order to borrow money with which to carry on its governmental functions, and that section 213 of the Revenue Act is merely declaratory of this constitutional limitation. Collector v. Day, 11 Wall. 113, 20 L. Ed. 122; Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759; Indian Motorcycle Co. v. U. S., 283 U. S. 570, 51 S. Ct. 601, 75 L. Ed. 1277; Burnet v. Coronado Oil & Gas Co., 285 U. S. 393, 52 S. Ct. 443, 76 L. Ed. 815. We need not explore in this case the extent of this exemption discussed in such cases as American Viscose Corporation v. Commissioner (C. C. A.) 56 F.(2d) 1033; United States Trust Co. v. Anderson (D. C.) 60 F.(2d) 291; Willcuts v. Bunn, 282 U. S. 216, 51 S. Ct. 125, 75 L. Ed. 304, for there can be no doubt that the obligations of the state of Virginia under consideration were issued to raise funds to be

expended for governmental purposes, and the real question for decision is whether the tax was imposed upon these obligations or upon the obligations of the private corporation. It is contended, however, that the obligations in question are not within the description of section 213 of the Revenue Acts, since it requires the taxpayer in his return to submit a statement showing the number and amount of the obligations and securities owned by him. This language, it is said, suggests that the statute relates only to the kind of obligation that is issued in numbers, and is evidenced by some instrument in writing of the type ordinarily used by the government in borrowing money. But there is no authority in Congress to limit the constitutional exemption from taxation to state obligations of any particular form, and indeed no good reason appears why the language of the section should not be interpreted to include the sort of obligations involved in this case.

Reversed.

NORTHCOTT, Circuit Judge (dissenting).

I am of the opinion that the judgment should be affirmed. The interest in question was paid upon the notes executed by the two corporations and the group of individuals. It is true that the interest came to the bank from the city of Norfolk and Isle of Wight county through a trustee, but it was applied upon the obligations of the two corporations and the group of individuals held by the bank. The loans were made by the bank to the two corporations and the group of individuals, and it is, in my opinion, immaterial as to whom the bank paid the money. The amount paid, to whomsoever paid, was secured from the bank as a loan, not by the city or county, but by the corporations and the individuals. Had the city and county failed to pay the interest, certainly the bank could have held the makers of the notes for the sums in default. Nor did the makers of the obligations securing the loans from the bank stand in the relation of accommodation indorsers, because the borrowers were undoubtedly interested in the construction of the roads in question, and thereby derived a direct benefit from the making of the loans. They cannot therefore be regarded as accommodation indorsers. They were beneficiaries of the transaction.

Profits made from contracts had with federal, state, and municipal governments are admittedly taxable. The negotiators of the loans here in question procured the bank to

advance the money and procured the agreements of the city and county to pay the interest. They made a profit on the transaction because of the benefit derived by them from the construction of the roads.

We have repeatedly held that findings of fact of the Board of Tax Appeals, based upon substantial evidence, cannot be reviewed by us and that we cannot substitute our judgment for the judgment of the Board as to questions of fact. Gossett v. Commissioner (C. C. A.) 59 F.(2d) 365; Merchants' Transfer & Storage Co. v. Burnet (C. C. A.) 49 F.(2d) 56, and authorities there cited. I am of the opinion that the findings of fact of the Board were amply sustained by the evidence, and that the ultimate finding of fact as made by the Board was correct.