AURORE B. BENOIT, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50804.    Filed December 30, 1955.

*Walter F. Gibbons, Esq.*, for the petitioner.

*Frank V. Moran, Jr., Esq.*, and *Joseph Landis, Esq.*, for the respondent.

658

OPINION.

RAUM, *Judge:* Petitioner urges that the respondent has failed to establish that she has any liability in law or in equity as the transferee of property of River Mills, Inc., for deficiencies in tax of that corporation for 1944 and 1945. She contends that on February 1, 1946, she sold her stock in River Mills, Inc., to her husband for $53,611.68; that he paid for it by check drawn on his own account; that the stock certificates evidencing her shares were transferred to him; that at the time of the sale there was no definite plan that the corporation be liquidated or dissolved; and that she received no assets from it as a transferee in liquidation or otherwise. She also contends that, even if it be assumed that the purchase price of her stock came from the

corporation, there is no basis for transferee liability because the respondent has not proved that it was rendered insolvent by reason of any transfer to her, and has failed to show that there are any unpaid deficiencies in tax for the years 1944 and 1945. In the alternative, she urges that assessment of any liability against her as transferee of the assets of River Mills, Inc., is barred by the statute of limitations.

The respondent contends that the payment to petitioner of $53,611.68 was a distribution by River Mills, Inc., in liquidation of its stock; that it was one of a series of such distributions which by December 12, 1946, left the corporation without assets to pay subsequently assessed deficiencies in income and excess profits taxes for 1944 and 1945; and that petitioner is, therefore, a transferee of assets of River Mills, Inc., and is liable for the deficiencies to the extent of the assets received by her, $53,611.68. He also contends that the statute of limitations does not bar the assessment and collection of any amount due from petitioner as transferee.

The pertinent provisions of the Internal Revenue Code of 1939 relating to a transferee's liability for unpaid taxes of his transferor are set forth in the margin.[2] The burden of proving such liability is upon the respondent. See sec. 1119, I. R. C. 1939; sec. 6902, I. R. C. 1954. In order to sustain this burden he had to establish that the petitioner received assets of River Mills, Inc.; and that it was insolvent at the time of the transfer or was made insolvent by the transfer, or that the transfer was one of a series of distributions in complete liquidation which left it insolvent and without means to pay its tax liability. See *J. Warren Leach*, 21 T. C. 70, 75. Cf. *Botz* v. *Helvering*, 134 F. 2d 538, 543 (C. A. 2), affirming 45 B. T. A. 970, 976; *Borall Corporation* v. *Commissioner*, 167 F. 2d 865, 870 (C. A. 2).

In 1945, the petitioner's husband, the owner of 98.9 per cent of the outstanding common stock of River Mills, Inc., and 69.1 per cent of its outstanding preferred stock, apparently because of advanced age, decided to retire and wind up its affairs, and advised the petitioner

---

[2] SEC. 311. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

\* \* \* \* \* \* \*

Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

\* \* \* \* \* \* \*

(f) DEFINITION OF "TRANSFEREE."—As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee.

of his decision. In December 1945 the stockholders and directors authorized the sale of the fixed assets and they were sold. Thereafter the corporation ceased to carry on the business of manufacturing woolen yarn in which it had theretofore been engaged. In January 1946 the directors approved the sale of the capital stock of a subsidiary owned by it. The evidence discloses that in December 1945 when the fixed assets of the corporation were sold, petitioner's husband withdrew $100,000 and made a loan of this amount to Maurice O. Guerin, one of his sons; that petitioner was apprehensive that she might lose her investment in the corporation; that for about a month and a half she demanded of her husband that she be paid for her stock; and that he wanted to wait until the corporation was dissolved but finally acceded to her wishes. On February 1, 1946, he withdrew $75,000 from the corporation which he deposited in his personal account, and on the same day he gave her a check on that account for $53,611.68, whereupon she endorsed her stock over to him. It appears from the evidence that the $53,611.68 received by petitioner equaled the sum of the par value of her preferred stock, arrears of dividends thereon, and the book value of her common stock on December 31, 1945.

It is apparent from the foregoing summary that we do not have here instances, as in cases cited by petitioner, where stockholders sold their stock prior to the liquidation of a corporation and the purchaser liquidated it and sold the assets (*Lester L. Robison*, 22 B. T. A. 395, and *J. T. S. Brown's Son Co.*, 10 T. C. 840), or where, after the stockholders of a corporation adopted a resolution authorizing its officers to sell any or all of its assets, and it had purchased from minority stockholders 60 of its outstanding 600 shares, it continued to engage in the business of manufacturing and selling at least one of its products for more than a year (*Charles Havard*, 25 B. T. A. 1161). Prior to February 1, 1946, when petitioner received $53,611.68 for her stock interest, the representatives of River Mills, Inc., had taken affirmative action "the normal and necessary result of which was the winding up of the corporate business." See *W. E. Guild*, 19 B. T. A. 1186, 1204. Its president and principal stockholder had decided to retire and wind up the corporate business, its fixed assets had been sold and others were in the process of being sold, and it had discontinued the business in which it had theretofore engaged. See *James P. Gossett*, 22 B. T. A. 1279, 1284–1285, affirmed 59 F. 2d 365 (C. A. 4). It was in the process of liquidation and any distributions then or thereafter made to its stockholders were liquidating in character even though no resolution of liquidation or dissolution had been adopted by them. Cf. *Holmby Corporation*, 28 B. T. A. 1092, 1105, affirmed 83 F. 2d 548, 550 (C. A. 9); *Fred T. Wood*, 27 B. T. A. 162, 166–167; *Horn &*

*Hardart Baking Co.* v. *United States*, 35 F. Supp. 89 (E. D., Penn.) ; *W. F. Kennemer*, 35 B. T. A. 415, 421, affirmed 96 F. 2d 177 (C. A. 5).

We are not impressed by petitioner's contention that she sold her River Mills stock to her husband on February 1, 1946, and did not receive a distribution in liquidation of that corporation. It is clear that the payment of $53,611.68 to her on that date had its inception in her desire to receive what she deemed to be her interest in the corporation as soon as possible after her husband had decided to retire and wind up its affairs, and its fixed assets had been sold. Once it was determined that her interest in the corporation was worth $53,611.68 and her husband agreed to the payment of this amount, it was immaterial as far as he was concerned whether the corporation distributed it to her directly at that time in redemption of her stock, or whether he withdrew it from the corporation, paid it to her, and she endorsed her stock over to him. Whichever course was followed, his interest in the remaining assets would be the same. However, the fact that the latter course was followed rather than the former did not change what would have been a distribution in liquidation into a bona fide sale of her stock to her husband. He was merely a conduit through which corporate funds passed on their way to her when the corporation was in the process of liquidation, and the substance of the transaction was that she received a liquidating distribution. Cf. *Oscar G. Joseph*, 32 B. T. A. 1192, 1201; *Caire* v. *Commissioner*, 101 F. 2d 992 (C. A. 5).

When a corporation in the process of liquidation distributes its assets to its stockholders, leaving it without means to pay its tax liability, each stockholder is liable as a transferee to the extent of the value of the assets received by him, since a stockholder is not entitled to receive assets distributed in a corporate liquidation until all of the corporation's obligations to creditors are discharged. *Benjamin E. May*, 35 B. T. A. 84, 91, settled and remanded for entry of decision 94 F. 2d 1017 (C. A. 5), 95 F. 2d 1002 (C. A. 5) ; *Updike* v. *United States*, 8 F. 2d 913, 917 (C. A. 8) ; *Phillips* v. *Commissioner*, 283 U. S. 589. While it is true, as petitioner urges, that the distribution to her of $53,611.68 did not render River Mills, Inc., insolvent at the time it was made, she nevertheless is liable as a transferee if that distribution was one of a series of distributions in liquidation which resulted in ultimate insolvency. *Botz* v. *Helvering*, *supra*, at p. 543; *Borall Corporation* v. *Commissioner*, *supra*, at p. 870. The respondent has proved that the distribution to her falls into this category. The balance sheet of the corporation as of December 31, 1945, shows net assets of $326,144.48. The corporation had income of $69,701.10 in 1946. Its assets available for distribution in 1946 were therefore approximately $395,845.58. Petitioner reported the receipt of $53,611.68

and her husband, in his 1946 return, reported the receipt of $355,-950.45 from the disposition of his River Mills, Inc., stock.[3] In his 1947 return he did not report any receipts from that source. These returns indicate that all of the assets of the corporation were distributed to its stockholders during 1946, and this view finds support in a petition for dissolution filed by petitioner's husband on December 13, 1946, which contains a sworn statement by him that all of the assets had been distributed to the stockholders—which allegation was admitted in the answer to the petition signed by petitioner as treasurer of the corporation.

At the trial in the present case petitioner introduced in evidence two statements showing credit balances in two checking accounts in the name of River Mills, Inc., in the Fall River National Bank on and after December 31, 1946. The balance in one account on this date was $13,229.67, and in the other $82,903.90. The amount in the first account was withdrawn by checks issued prior to June 11, 1947, and the amount in the second account was withdrawn by checks issued prior to February 4, 1950. Petitioner's counsel stated that these statements were offered in evidence to prove that River Mills, Inc., had assets for years after December 31, 1946.

We are not convinced that the fact that balances appeared in bank accounts in the name of River Mills, Inc., after December 31, 1946, is inconsistent with the sworn statement of petitioner's husband in the petition for dissolution that all of its assets had been distributed to its stockholders prior to that date. Petitioner and her husband were the only persons authorized to draw on the corporation's bank accounts. Petitioner testified that all she ever received for her stock interest was $53,611.68, and it well may be that her husband appropriated to himself the bank accounts as part of the assets he received in liquidation and treated them as his property prior to December 31, 1946, inasmuch as he had the power to withdraw the amounts in these accounts as and when he saw fit to do so. But even if it be assumed that the balances in these accounts were assets of River Mills, Inc., after December 31, 1946, and until they were withdrawn, we are unable to see how this would help the petitioner. Her liability as a transferee depended on the situation existing at the time of the completion of the series of distributions in complete liquidation of the corporation. And that event occurred at the very latest when the balances were finally withdrawn, not later than February 4, 1950. The corporation then had no credit balances in its name in any bank

---

[3] The amounts reported by petitioner and her husband totaled $409,561.93 ($53,611.68 plus $355,950.45). This exceeded the book value of the corporation's assets at December 31, 1945, $326,144.48, plus its income for 1946, $69,701.10, or $395,845.58. The excess may be attributable to the fact that in the course of the liquidation amounts realized for some assets were in excess of book value.

account or any other assets, having previously made distributions to its stockholders, including petitioner, in liquidation of its stock which rendered it insolvent and unable to pay the deficiencies assessed. In such circumstances each stockholder is liable to the extent of the distribution received by him for the unpaid deficiencies even though that distribution may not have rendered the corporation insolvent, provided that the distribution was one of a series that ultimately did render the corporation insolvent. See *W. S. Scamehorn*, 27 B. T. A. 155; *Botz* v. *Helvering, supra; Borall Corporation* v. *Commissioner, supra.*

It is somewhat puzzling as to why the Commissioner has proceeded against petitioner for the full amount of her distribution, since her husband who was also a transferee had received the great bulk of the corporate assets and was therefore similarly liable for the taxes to the extent of such assets which he received. However, his liability as a transferee cannot relieve her of her transferee liability, see *Phillips* v. *Commissioner*, 283 U. S. 589, 604, although she may be entitled to contribution from him in a separate action. Cf. *Phillips-Jones Corporation* v. *Parmley*, 302 U. S. 233; *Estate of George L. Cury*, 23 T. C. 305, 339.

Petitioner's contention that the respondent failed to prove one of the alleged elements of transferee liability, that the deficiencies in tax for the years 1944 and 1945 assessed against the transferor, River Mills, Inc., have not been paid, is without merit. Regardless of whether there is such burden of proof on the respondent in the circumstances of this case, it is clear to us on this record that the deficiencies have not been paid. The deficiencies were not assessed against River Mills, Inc., until January 11, 1952. The respondent has proved that for some years prior thereto the corporation had no assets. In these circumstances, we think it has been shown that these deficiencies have not been paid. See *Commissioner* v. *Renyx*, 66 F. 2d 260, 261 (C. A. 2).

Petitioner contends finally that her liability as transferee is barred by the statute of limitations.

The pertinent provisions of the Internal Revenue Code of 1939 are the following:

SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLEC-
TION.

(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

SEC. 276. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLEC-
TION—EXCEPTIONS

(b) WAIVER.—Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have

consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

SEC. 311. TRANSFERRED ASSETS.

(b) PERIOD OF LIMITATION.—The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) In the case of the liability of an initial transferee of the property of the taxpayer—within one year after the expiration of the period of limitation for assessment against the taxpayer;

* * * * * * *

(c) PERIOD FOR ASSESSMENT AGAINST TAXPAYER.—For the purposes of this section, if the taxpayer is deceased, or in the case of a corporation, has terminated its existence, the period of limitation for assessment against the taxpayer shall be the period that would be in effect had death or termination of existence not occurred.

The petitioner contends that the waivers she executed as treasurer of River Mills, Inc., after December 18, 1949, which purported to extend the statutory period for assessment for each of the taxable years to June 30, 1951, and June 30, 1952, were ineffective and invalid because the decree dissolving River Mills, Inc., was entered on December 18, 1946, and under the laws of Rhode Island [4] its corporate existence ceased for all purposes on December 18, 1949. She urges, therefore, that inasmuch as waivers executed prior to the latter date extended the statutory period for assessment as to both 1944 and 1945 only to June 30, 1950, the assessment made against River Mills, Inc., on January 11, 1952, and the notice of transferee liability mailed to her on June 29, 1953, were untimely.

The respondent contends, and alleged in his amended answer, that petitioner is estopped to deny the validity of the agreements by River Mills, Inc., to extend the period of limitations for assessment and collection of the deficiencies for the years 1944 and 1945 to June 30, 1952.

We agree with the respondent. Petitioner does not dispute the validity of consents executed by her husband as president of River Mills, Inc., which extended the statutory period for assessment and collection of deficiencies determined against that corporation for the years 1944 and 1945 to June 30, 1950. After the 3-year period following the dissolution of River Mills, Inc., but before June 30, 1950,

---

[4] The General Laws of Rhode Island (1938), chapter 116, article II, provide:

Sec. 63. Every corporation whose corporate existence expires by any limitation or is terminated by dissolution or otherwise shall nevertheless be continued as a body corporate for 3 years after the date of such expiration or termination for the purpose of prosecuting and defending actions, suits or proceedings by or against it, and of enabling it to settle and close its affairs, to dispose of its property and to distribute its assets, but not for the purpose of continuing the business for which it was established: Provided, however, that no action, suit or proceeding begun by or against any such corporation before the expiration of said 3 years shall abate because of the termination of said period.

consents were executed in its name extending the period for assessment and collection to June 30, 1951. These consents were signed by petitioner as treasurer of River Mills, Inc., and bore its seal. Prior to June 30, 1951, petitioner again executed consents as treasurer of River Mills, Inc., which consents also bore the corporation's seal extending the period for assessment and collection to June 30, 1952. When River Mills, Inc., was dissolved no return required by section 148 (d) of the Internal Revenue Code of 1939, setting forth the terms of the resolution of dissolution and liquidation of the corporation, was filed. Under these circumstances, the Commissioner was entitled to rely on the validity of the consents executed by petitioner on behalf of River Mills, Inc., notwithstanding the fact that the existence of that corporation had terminated more than 3 years prior to their execution; and the petitioner is therefore estopped to deny their validity. *Lucas* v. *Hunt*, 45 F. 2d 781 (C. A. 5); *Ruby Y. Lloyd*, 29 B. T. A. 74. Cf. *R. H. Stearns Co.* v. *United States*, 291 U. S. 54. Since the notice of liability against petitioner as transferee was sent within 1 year of the period of limitations against River Mills, Inc., as extended, the statute of limitations does not bar assessment and collection of that liability.

*Decision will be entered for the respondent.*