**HELLMAN v. GLENN, Collector of Internal Revenue.**

**No. 2223.**

District Court, W. D. Kentucky.

Jan. 13, 1941.

Ben F. Washer, of Louisville, Ky., for plaintiff.

Eli H. Brown, III, U. S. Dist. Atty., of Louisville, Ky., and David C. Walls, Asst. U. S. Dist. Atty., of Hardinsburg, Ky., for defendant.

MILLER, District Judge.

Sidney L. Hellman filed this action against the Collector of Internal Revenue to recover $2,565.31 with interest as additional income tax for the year 1935 assessed by the Commissioner of Internal Revenue and paid under protest. The action was timely filed after application for refund was denied. Hellman has died during the pendency of the action and it has been revived in the name of Clarence Hellman, executor of the estate of Sidney L. Hellman, deceased.

Sidney L. Hellman was a large stockholder and director in Schenley Distillers Corporation. Prior to May 18, 1935, the market price of the common stock of that corporation had suffered a decline and Hellman became of the opinion that its market price would materially increase during the coming months and the stock was accordingly a good purchase. On May 18, 1935 Hellman wrote the following letter to a firm of Louisville brokers:

"Messrs. Stein Bros. and Boyce,
"Starks Building,
"Louisville, Ky.
    "Attention Mr. James S. Levy.
"Dear Jimmy:
    "Please purchase Monday at the market 1500 shares Schenley Distillers Corporation.

"I would thank you to have this purchase made in my name as Trustee, as my intention in making this purchase is to divide the profits when the account is closed, in the following proportions:

500 shares—C. E. Selvage
150 shares—Dr. Silas H. Starr
150 shares—Mildred Loveman
150 shares—Maude Starr
150 shares—Ray Hellman
150 shares—Clare Hellman
150 shares—Charles S. Nahm, Jr.
100 shares—Clarence J. Hellman

"Thanking you in advance for your attention to this account, I am,

"Very truly yours,
"Sidney L. Hellman."

The brokers executed this order on May 22, 1935, in the name of Sidney L. Hellman, trustee. The purchase price was $41,212.50. The stock was later sold at intervals between July 19, 1935, and September 9, 1935, at sale prices totalling $50,-472.68. The net profit on the transaction after charges was $8,757.74. This was paid by the brokers direct to the following parties by checks to their respective orders:

C. E. Selvage...............$2,919.25
Dr. Silas Starr.............. 875.78
Mildred Loveman .......... 875.78
Maude Starr .............. 875.78
Ray Hellman .............. 875.77
Clare Hellman ............. 875.77
Charles S. Nahm ........... 875.77
Clarence J. Hellman......... 583.84
                           ———————
Total ...................$8,757.74

Each of these eight parties included their respective amounts in their individual income tax returns for the year 1935 and paid the tax thereon. The account at the office of the broker was carried as a margin account in the name of Sidney L. Hellman, trustee, and was secured by 1,200 shares of Schenley stock owned by Sidney Hellman and pledged by him on the account, in addition to the pledge of the stock so purchased. C. E. Selvage was a close business associate of Sidney Hellman, and the other seven parties were relatives by blood or marriage of Sidney Hellman. The Commissioner of Internal Revenue contended that the entire profit realized from the transaction was income to Sidney Hellman in the year 1935 and the distribution to the parties above referred to in their respective amounts was by way of gift. The additional assessment was accordingly made and the resulting tax paid under protest.

The general principles of law applicable to this case are not in dispute. We agree with the general rules laid down by the authorities cited by the defendant holding that earned income is taxed to and must be paid by the one who earns it; that unearned income is taxed to the one who owns the property or right that produces it; that no device or arrangement however shrewdly and cunningly contrived can make future earnings taxable to any but the real owner thereof, nor make future income from property taxable to any but the owner of the right or title from which the income springs; that the assignment of future profits to be earned by the assignor does not divest the assignor of the tax liability due thereon; that profits from the sale of securities, which the taxpayer intended to give to others but did not accomplish because of retention of control over them, are taxable to the would be donor; that the income from a revocable trust is taxable to the creator of the trust instead of the beneficiary; and that a gift of income earned by a taxpayer, even though within the same taxable year in which the income was earned and received does not relieve the person earning the income and disposing of it by gift of the payment of the income tax thereon. Lucas, Commissioner, v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Weil v. Commissioner, 5 Cir., 82 F.2d 561; Noel, Collector, v. Parrott, 4 Cir., 15 F.2d 669; Saenger v. Commissioner, 5 Cir., 69 F.2d 631; Jackson v. Commissioner, 4 Cir., 64 F.2d 359; Carkhuff v. Commissioner, 6 Cir., 83 F.2d 626, 106 A.L.R. 796; Reinecke v. Smith, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109.

If the foregoing transaction is to be construed as an individual transaction on the part of Sidney Hellman and as an assignment of future profits by him to the eight designated parties, or as a gift by him of the proceeds after being realized to the eight designated parties, or as an incomplete gift of the securities purchased, or as a revocable trust, then the Commissioner's ruling is correct, and the assessment properly levied. The plaintiff, however, contends that it was not an individual transaction of Sidney Hellman, but was a joint enterprise by the eight parties named, acting upon the recommendation of Sidney Hellman in which Sidney Hellman merely acted as their agent, and that the profit

realized was therefore properly a separate profit of the respective parties. There is no rule of law which prohibits parties from acting through an agent and becoming entitled to all of the profits from the transaction, without any participation in the profits by the agent if the relationship is actually and legally the relationship of principal and agent. See Bing v. Bowers, Collector, D.C., 22 F.2d 450. The Government has no right to ignore this legal relationship if it actually exists, merely because a different treatment of the situation will result in the collection of more taxes. Webb v. Commissioner, 2 Cir., 67 F.2d 859; Rose v. Commissioner, 6 Cir., 65 F.2d 616; Cohen v. Commissioner, 4 Cir., 31 F.2d 874; Central Life Assurance Society v. Commissioner, 8 Cir., 51 F.2d 939; 112 West 59th St. Corp. v. Helvering, Commissioner, 62 App. D.C. 350, 68 F.2d 397.

Decision in this case accordingly rests upon the proper construction of the transaction in question as reflected by the letter of May 18, 1935, and by the contractural relationship existing between Sidney Hellman and the eight participants at the time when the transaction was entered into and carried out.

The evidence pertaining to the legal relationship between Sidney Hellman and the eight participants is undisputed. The defendant offered no testimony at the close of the plaintiff's case. The witnesses for the plaintiff testified that Sidney Hellman discussed this matter with them prior to the purchase, recommended that they buy the stock, agreed to act as their agent in making the purchase, and that it was agreed between Sidney Hellman and each of them that if any loss resulted from the transaction each one of them would be responsible for and pay his proportionate share of the loss so resulting. They also testified that although Sidney Hellman put up the 1,200 shares of Schenley stock as collateral, yet this was done by agreement between them and that each one was able and in a position to put up their respective collateral if asked to or required by Sidney Hellman, and that Sidney Hellman had no interest in the transaction individually and would neither participate in the profits or share the losses in the event of its successful or unsuccessful termination.

We do not believe that the transaction can be reasonably construed either as a gift of the securities purchased, or as a trust, even though the word "Trustee" is used. It was never the intention of Hellman to buy the stock himself, actually pay the $41,212.50, and make a gift of the securities to the other eight parties. Nothing in the evidence even remotely justifies that contention. Hellman was giving valuable information to relatives and a friend, but he was not making gifts of thousands of dollars. Nor was there ever any intention to create a trust estate of the securities purchased, in the technical sense of Hellman taking the legal title for the benefit of others. The word "Trustee" was loosely used, as might be expected in an informal letter by a layman without legal advice, and was for the purpose of showing that it was not his individual transaction rather than to designate with legal exactness the relationship between the parties. The transaction was either the transaction of Hellman, individually and a gift of the profits thereafter, or it was the joint transaction of the eight participants acting through Hellman as their agent without Hellman participating. Accordingly, the authorities cited by defendant dealing with incompleted gifts and revocable trusts are not applicable. The wording of the letter, strictly construed, is susceptible of the construction that Hellman intended to divide the profits as a gift, after he made them, but the letter must be considered in connection with the other evidence in the case, which entirely refutes that construction, and is uncontradicted. Taken at its face value, it unquestionably establishes the relationship of principal and agent between the eight participants on the one side and Hellman on the other.

Defendant's real contention is that this testimony should not be taken at its face value but should be overcome by inferences drawn from the facts, particularly the relationship between Hellman and the eight participants, and the fact that Hellman put up the collateral for the margin account. Such inferences probably exist, but in the opinion of the Court they are entirely refuted by the direct statements of the witnesses and by a reasonable explanation of why the margin account was so secured. In addition the actual facts as they occurred support this view. The margin account was actually carried in the name of Hellman, trustee, instead of Hellman individually; the profit eventually realized was actually divided between the eight participants without any of it being paid to Hellman; the eight participants each treated it as income earned during the year 1935

and not as a gift. This view is further supported by the facts of another transaction handled by Hellman for the same parties with the exception of C. E. Selvage, on December 17, 1935. At that time Hellman wrote a similar letter to Stein Bros. and Boyce confirming his purchase from that firm of 1,000 shares of preferred stock of Schenley Distillers Corporation, being an original issue by the Corporation at that time. In this letter he used practically the same words as in the earlier letter of May 18, 1935, saying "I would thank you to have this purchase made in my name as Trustee, as my intention .in making this purchase is to divide the profits if the account is closed, or to divide the shares in the following proportion." The letter then lists the names and number of shares for each of the seven participants. In this instance Hellman borrowed $100,000 from the Citizens Union National Bank of Louisville on his note dated December 19, 1935, signed by himself as trustee, and by himself individually, and put up his own securities as collateral on the note. This note was renewed in the same manner on June 19, 1936. At the time of the execution of the original note and upon its renewal the individual participants executed their individual notes to Hellman in the amounts respectively showed by them to protect Hellman in his obligation to the bank on their behalf. The market price of the preferred stock had a slight rise and thereafter took a decline and began to show a sizeable loss. When the note came due again on December 19, 1936, it was renewed by another note to the same bank for $100,000 due in six months and signed jointly by all of the parties. At .a later date this obligation was divided into the individual and separate obligations of each of the seven parties. At the time when this action was tried the market price of the preferred stock had declined to about $70 a share, which represented a loss of $3,000 to each of four of the participants and a loss of $6,000 to each of three of the participants. It will thus be seen that the agency relationship claimed by the plaintiff to exist in the May transaction was actually shown to exist in the December transaction of the same year when the transaction resulted in a loss instead of in a profit. The testimony is uncontradicted that the relationship between the parties was the same in both transactions.

Our conclusion is that the transaction is to be treated as the joint transaction of the eight participants acting through Hellman as their agent and that the additional assessment against Hellman was erroneous. Counsel will submit for entry findings of facts and conclusions of law in accordance with these views. Judgment to be entered for the plaintiff.