WILLIAM T. WHITAKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Whitaker v. Commissioner
Docket No. 39151-85.
United States Tax Court
T.C. Memo 1988-418; 1988 Tax Ct. Memo LEXIS 446; 56 T.C.M. (CCH) 47; T.C.M. (RIA) 88418; September 6, 1988. John Kennedy Lynch, for the petitioner. Steven A. Walk, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency of $ 36,429 in petitioner's 1981 Federal income tax. After concessions, the issues remaining *449 for decision are: (1) whether petitioner is entitled to claim dependency exemptions for his two daughters (1) whether petitioner is entitled to claim a theft loss in the amount of $ 4,500; (3) whether petitioner is entitled to various Schedule C deductions for expenses incurred in the operation of his tax practice; (4) whether petitioner failed to report dividend income in the amount of $ 14,087; (5) what type of business entity, for tax purposes, is petitioner's enterprise as an entertainment promoter, and whether he is entitled to various Schedule C deductions in connection with its operation; and (6) whether petitioner is liable for additions to tax under sections 6653(a)(1)[1] and 6653(a)(2). For convenience, the Findings of Fact and Opinion are combined for each issue. Petitioner has the burden of proving that respondent's deficiency determination is incorrect. *450 Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Respondent raised the business entity issue and the additions to tax at trial. As a result, he will have the burden of proof for these issues. Rule 142(a). In order to meet his burden petitioner must present competent and relevant credible evidence. We, however, are not bound to accept petitioner's testimony at face value even where it is uncontradicted if it is improbable, unreasonable or questionable. Lovell and Hart, Inc. v. Commissioner,456 F.2d 145, 148 (6th Cir. 1972), affg. per curiam a Memorandum Opinion of this Court; Banks v. Commissioner,322 F.2d 530, 537 (8th Cir. 1963), affg. a Memorandum Opinion of this Court. Further, "All of the probative evidence -- circumstances as well as direct testimony -- necessarily is open to and should be considered by the Tax Court in resolving the factual probabilities of the situation * * *." Heil Beauty Supplies Inc. v. Commissioner,199 F.2d 193, 195 (8th Cir. 1952), affg. a Memorandum Opinion of this Court. *451 Some of the facts have been stipulated and are so found. The stipulation of facts, together with related exhibits, are incorporated herein by this reference. Petitioner is an attorney who was unmarried during 1981 and resided in Akron, Ohio when he timely filed the petition. Petitioner filed a Federal income tax return for the taxable year 1981 with the Internal Revenue Service Center in Cincinnati, Ohio. Dependency Exemptions
Petitioner is a noncustodial parent of two daughters from a prior marriage, Amy and Andrea Whitaker. On his 1981 Federal income tax return, petitioner indicated that Amy and Andrea did not live in his home during any period of the year. However, petitioner did claim dependency exemptions for both daughters, noting on his tax return that he provided more than one half of their support. We do not know whether petitioner's ex-wife also claimed dependency exemptions for the daughters on her income tax return. Petitioner and Amy testified that Amy and Andrea resided with petitioner throughout approximately the first six months of 1981. Additionally, petitioner testified that he paid $ 400 per month to his ex-wife to provide for his daughters' support *452 through the last six months of the year. Section 151(c) allows a taxpayer exemptions for dependents as defined in section 152. To be a dependent, the individual must be related to the taxpayer or be part of his household, and receive more than half of his support from the taxpayer. Section 152(a). Additionally, section 1523(e) provides special rules for children of divorced parents. In general, the custodial parent will be entitled to claim the dependency exemption, subject to two exceptions: (1) if the divorce decree provides that the noncustodial parent is entitled to the deduction and the noncustodial parent provides at least $ 600 in child support; or (2) if the noncustodial parent provides at least $ 1,200 in support and the custodial parent fails to establish that she provided more support than the noncustodial parent. Custody for purposes of section 152 is generally determined by the terms of the most recent divorce decree. Section 1.152-4(b), Income Tax Regs. In the absence thereof, it will be deemed to be with the parent who has the physical custody *453 of the child for the greater portion of the calendar year. Section 1.152-4(b), Income Tax Regs.
Petitioner's divorce decree is not in evidence. Petitioner's testimony regarding the dependency of his daughters was self-serving and in direct contradiction to his signed tax return. Additionally, Amy's testimony was vague regarding the dates that she resided with petitioner in 1981. We are unable to conclude from her testimony whether she and Andrea resided with petitioner more than one half of the year. Therefore, petitioner is deemed to be the noncustodial parent. As such, he must qualify under an exception of section 152(e) to be entitled to the dependency exemptions. Petitioner did not present a divorce decree entitling him to the dependency exemptions as a noncustodial parent, or requiring child support payments. Also, he did not present any canceled checks to substantiate the alleged $ 400 per month payments. Petitioner has failed to present any clear evidence that he satisfies either of the two exceptions of section 152(e). Thus, we hold that petitioner is not entitled to dependency exemptions for his daughters. Theft Loss
Petitioner's *454 father is in the business of importing and selling sporting goods. Sometime near the end of 1980 or in early 1981, petitioner allegedly purchased 100 Lee Trevino golf club sets from his father at a price of $ 75 per set. Petitioner's alleged intent was to resell the clubs at a profit. Petitioner was not in the business of selling golf clubs or other sporting goods prior to this alleged purchase. However, he had acquired some knowledge of the business by accompanying his father at trade shows and on buying excursions. Petitioner enlisted the aid of a Craig Harrah (Harrah), an acquaintance of petitioner's, who had sales experience in assorted fields. Petitioner and Harrah had an oral contract for Harrah to sell 60 of the sets of golf clubs. Harrah could decide the selling price but was required to remit $ 100 to petitioner for every set sold. Allegedly Harrah was successful in selling the golf club sets by mid 1981, however, he allegedly failed to remit any money to petitioner and converted all of the sales proceeds for his own use. Petitioner was unsuccessful in his informal efforts to collect the money due from Harrah. Petitioner deducted $ 4,500 as a theft loss under section *455 165(a) for the taxable year 1981 as a result of this failed transaction. Although this loss was reflected as a theft loss on petitioner's individual tax return, at trial and on brief petitioner referred to this loss under several other classifications including business loss, bad debt loss, embezzlement loss, and loss from a transaction entered into for profit. We assume that these classifications were proffered as arguments in the alternative though they were not set out as such and they were frequently referred to interchangeably by petitioner. Section 165 provides that a deduction from income is allowed for any loss sustained by a taxpayer during the taxable year that is not compensated for by insurance or other means. For individuals, losses are deductible only if they fall into one of three categories: (1) business losses, (2) profit-transaction losses, or (3) casualty and theft losses. Section 165(c). While petitioner contends that the loss which he sustained fits any of these categories, we need not reach this determination. *456 For any type of loss deduction to be allowed under section 165, two requirements must be met. First, "a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and * * * actually sustained during the taxable year." Section 1.165-1(b), Income Tax Regs. Looking to the facts surrounding the transaction described by petitioner, we hold that this requirement was not met. The oral contract between petitioner and Harrah did not specify when Harrah was to remit the profits from the sale of the clubs. Without specifying when the funds were due, we cannot determine that the funds were in arrears at the close of the taxable year or that a loss was actually sustained. Thus, it cannot be said that the transaction was "closed and completed," or that the loss was "fixed by an identifiable event." Secondly, the amount of the loss must be established for the deduction to be allowed. The amount of the deduction shall not exceed the adjusted basis of the property involved. Section 165(b); section 1.165-1(c)(1), Income Tax Regs. A loss cannot be computed where the taxpayer's basis in the property is not proven. *457 Towers v. Commissioner,24 T.C. 199, 239 (1955), affd. on other grounds sub nom. Bonney v. Commissioner,247 F.2d 237 (2d Cir. 1957). Petitioner has the burden of establishing the adjusted basis of the golf club sets. See Oates v. Commissioner,316 F.2d 56 (8th Cir. 1963), affg. a Memorandum Opinion of this Court. Petitioner has not provided any credible evidence by which to establish his basis in the golf club sets. Petitioner's testimony regarding this transaction was self-serving and questionable. Petitioner was unable to provide an invoice or canceled check to establish his purchase of the clubs. He also failed to have his father testify on petitioner's behalf to corroborate this purchase. We may interpret this failure to call a readily accessible witness as an indication that the testimony would have been unfavorable to petitioner. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioner did not produce a bill of lading showing *458 an estimated value of the clubs when shipped from his father's location to petitioner's home. Additionally, although allegedly investing $ 7,500 in 100 sets of golf clubs, petitioner made no effort to secure insurance for these goods. We are asked to believe that petitioner, as an attorney and businessman, gave 60 sets of golf clubs, with an anticipated value in excess of $ 6,000, to an individual known to have many judgments for collection against him, without so much as a promissory note to record the transaction. This is unreasonable. The only evidence provided by petitioner to establish the existence of the golf club sets and the nature of the loss surrounding them is a notarized affidavit from Harrah. [2] In this affidavit Harrah attested to having received and sold 60 sets of clubs, and having converted the sales proceeds to his personal use. There is no mention of value of these clubs in the affidavit. Petitioner testified that Harrah was informed that he would be subpoenaed for trial. Yet, Harrah was unavailable at trial for cross examination. We place little weight of an affidavit from an individual who admits within the affidavit to converting the funds of another *459 to his personal use. Petitioner has not proven that he had a basis in the golf club sets to entitle him to a loss deduction. Thus he has failed to satisfy both preliminary requirements of section 165 and is not entitled to any type of loss deduction under this section. Similarly, we find that petitioner is not entitled to a bad debt loss under section 166(a)(1) in connection with these golf club sets. Section 166(b) states that the amount of deduction for purposes of section 166(a) is the adjusted basis for determining the loss from the sale or other disposition of the property. Again, without first establishing that petitioner had a basis in the property in question, we are unable to find that he is entitled to a deduction. Law Practice Schedule C Deductions
During 1981, petitioner operated a law practice in Akron, Ohio, known as Whitaker and Reilly. This law practice was conducted as *460 a proprietorship, employing one secretary and one law clerk. In addition to petitioner, the firm had two attorney associates, Tom Pitts (Pitts) and Elizabeth Reilly (Reilly), who were independent contractors. After concessions prior to trial, [3] the Schedule C deductions disallowed by respondent which remain at issue are: (1) car rental expenses for automobiles rented by the law firm for the personal and business use of petitioner and various associates ($ 6,906); (2) parking expenses for private parking spaces rented by the law firm and provided for the use of all employees and associates ($ 1,250); and (3) travel expenses attributable to various trips taken by petitioner in connection with the law firm ($ 3,135). A trial, a deduction of $ 1,190 for office supplies disallowed by respondent was also at issue. However, petitioner made no mention of this deduction on brief, therefore, we conclude that petitioner has conceded this issue. *461 For petitioner to be entitled to deductions for the expenses remaining at issue, he must prove that these expenses were "ordinary and necessary". Section 162; Rule 142(a). That is, if the expense was incurred for a business purpose which bears a reasonably close relationship to the taxpayer's trade or business, it will be properly deductible. Commissioner v. Heininger,320 U.S. 467 (1943). Likewise, for an expense to be considered "ordinary and necessary" it must be one which is customary and appropriate for the development of the taxpayer's business. Welch v. Helvering,290 U.S. 111 (1933); Commissioner v. Tellier,383 U.S. 687 (1966). (1) Car Rental
Petitioner leased automobiles for his two associates, Pitts and Reilly, throughout 1981. He also leased an automobile for himself until early July when he purchased an auto. These autos were available for both business and personal use, but the firm did not require the individuals to account for the amount of actual personal use, nor was any value of such personal use reported *462 as compensation to the individuals. Petitioner has provided canceled checks paid to Preferred Finance, Inc. totaling $ 1,645.38, representing the leasing cost of the automobile used by Pitts. Additionally, petitioner has provided canceled checks paid to Ron Peterson Leasing totaling $ 3,167.50, representing the leasing cost of the automobile used by Reilly. However, petitioner has not presented any leasing agreement nor canceled checks to substantiate the costs attributable to the leased automobile used by himself for the first half of the year. We find that these leasing expenses were ordinary and necessary to the law firm to the extent that the business use of the vehicles enabled the attorneys to travel freely between their offices and the courthouse or clients' offices, to file required court documents, and to perform other day-to-day law related tasks away from the office. We may estimate the amount that a taxpayer is entitled to deduct for a business expense when he has convinced us that he in fact incurred an ordinary and necessary expense in the conduct of his trade or business, *463 and has provided a means to make a reasonable estimate of the expense. See Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Petitioner has conceded that he used his auto only 50 percent for business rather than 100 percent. If we use this figure as an estimate of the business usage for the autos attributable to Pitts and Reilly then petitioner is entitled to deduct 50 percent or $ 2,406.44 of the leasing costs of these two vehicles. Petitioner has not contended that the other 50 percent of the cost of his associates' automobiles was compensatory, and he did not report those amounts as compensation to them. [4] Petitioner has failed to substantiate the leasing costs attributable to his automobile, thus we are unable to estimate the amount of expense incurred for business usage of his auto and petitioner is not entitled to an additional deduction.
In addition to the three automobiles aforementioned, petitioner leased an automobile from Holiday Rental for four months for use by a George Kearney (Kearney). These leasing *464 costs were substantiated by canceled checks totaling $ 1,410. Kearney had an informal arrangement with petitioner in which Kearney would utilize his contacts with various professional athletes and encourage them to seek legal representation through petitioner when needed. Petitioner did represent a few professional athletes, though it is unclear whether these clients were generated through referrals from Kearney. Petitioner provided the use of a leased automobile to Kearney who traveled extensively via the auto to meet with potential clients. Kearney also made personal use of the auto. The use of this auto was not reported as income to Kearney, nor was any other compensation paid to Kearney for his services. While the auto may have been used by Kearney to reinforce his personal contacts with professional athletes, there is nothing in the record sufficient to tie the use of this auto to the furtherance of petitioner's business. Petitioner has not met his burden of proof that the expenditure for leasing this auto for Kearney was reasonably closely related to petitioner's business, nor that the expenditure was ordinary and necessary. Therefore petitioner is not entitled to *465 deduct the $ 1,410 in leasing costs attributable to this automobile. (2) Parking
During 1981, petitioner had provided five private parking spaces located in a lot behind his office building for use by the two attorney associates, petitioner's secretary, the law clerk, and himself. These parking spaces were not reported as compensation to these individuals. Petitioner provided canceled checks totaling $ 1,250 payable to Akron Parking Co. and Russell Harp Parking [5] to substantiate the amount of the deduction taken. We find that the expenditures for renting these parking spaces were proximately related to the petitioner's business. Additionally, we find that the expenditures were ordinary and necessary in that the nature of a law firm is such that employees and associates must frequently run errands away from the office thus making efficient access to and from the office advantageous. Private parking located near the office would provide this sort of easy access and contribute toward the development and efficient operation of petitioner's firm. Thus petitioner is entitled to *466 the $ 1,250 deduction for parking expenses. (3) Travel
Petitioner deducted $ 3,135 for tavel expenses which were disallowed in their entirety by respondent. Petitioner based this figure on Whitaker and Reilly's expense ledger year-end total for the travel account. However, petitioner was only able to produce five canceled checks totaling $ 2,985.38 attributable to these expenses. No explanation was provided for the nonproduction of the other checks posted to this account. Travel and entertainment expenses must meet the requirements of sections 162 and 274 in order to be deductible. That is, petitioner must not only prove that these expenses were ordinary and necessary business expenses (section 162), but he must also meet the strict substantiation requirements of section 274. Section 274(d) provides that no deduction will be allowed for any traveling expense (including meals and lodging while away from home) unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement: (A) the amount of such expense or other item; (B) *467 the time and place of the travel; and (C) the business purpose and relationship of the expense or other item. Of the five travel expense checks presented, they have been accounted for by petitioner as follows: Check number 2764 in the amount of $ 1,371.50 payable to Flair Travel represents round-trip airfare for two trial-related trips. Whitaker and Reilly customarily booked all necessary air travel through the travel agency known as Flair Travel. The first trip was made by petitioner on or about February 3, 1981 to Punta Gorda, Florida to represent the defendant in a criminal case, Florida v. Bunch. The second trip was made by petitioner and his associate, Reilly, on or about February 27, 1981 to Philadelphia, Penn., to represent a Buddy Martin on appeal from a habeas corpus petition in the United States Court of Appeals of the Third Circuit. We find that the substantiation requirements of section 274(d) have been satisfied. Check number 2696 in the amount of $ 250 payable to petitioner was allegedly for incidental expense money for the aforementioned trip to Florida. This money was to cover expenses such as motel, car rental and meals for petitioner. Petitioner has *468 failed to present any receipts to account for the ways in which this money was spent. Moreover, since this money was taken in cash by petitioner as an advance for the trip, absent an accounting of his expenditures, we are unable to determine whether all of the $ 250 was expended for business purposes. Petitioner has not met his burden of proof in substantiating this expense in accordance with the requirements of section 274(d), thus he is not entitled to deduct the $ 250. Check number 3165 in the amount of $ 468 payable to Flair Travel allegedly represents airfare for a second trip to Florida in the Fall of 1981 for a retrial of the Florida v. Bunch case. However, petitioner's testimony regarding this check is vague, since he was unable to clearly associate this check with that specific trip. Petitioner has not met the strict substantiation requirements of section 274(d) in regard to this check and therefore is not entitled to deduct the $ 468. The remaining two checks presented by petitioner, check number 3201 in the amount of $ 532 and check number 3283 in the amount of $ 363.88, were payable to petitioner's father and mother respectively. Petitioner alleges that these *469 amounts were paid as reimbursements to his parents for charges he had made on their American Express credit card for business expenses during two trial sessions outside of Akron. Petitioner had been sharing his parents' credit card due to some personal credit difficulties that he had at that time. Petitioner did not present any receipts substantiating the expenditures attributable to these amounts, nor did he present the pertinent credit card statements which customarily itemize the expenditures. Petitioner has failed to adequately draw a connection between these checks and a bona fide business purpose. As such, he has not met the substantiation requirements of section 274(d) and is not entitled to these deductions. In summary, of the total $ 3,135 deducted by petitioner for travel expenses that were disallowed by respondent, we find that petitioner is only entitled to deduct $ 1,371.50. Petitioner failed to meet the substantiation requirements of section 274(d) for the remaining amount. Dividend Income
During 1981, petitioner maintained two brokerage accounts in his name at E. F. Hutton. One account (A290198133) was petitioner's personal account used to trade securities, *470 to receive common stock dividends, and to borrow funds. Petitioner properly reported all dividends attributable to this account; thus this account is not at issue. [6]
The second account (A290163313) was opened solely in petitioner's name with a lump sum deposit sometime prior to 1981. This was a cash management account in which dividends were accumulated during 1981. This account generated $ 14,087 in dividends during 1981, which petitioner did not report as income. Petitioner argues that this account consisted of funds which were being held in escrow for a client for his law practice, Dennis Shaul (Shaul), and thus the income to the account should not be attributed to petitioner. Respondent contends that petitioner had dominion and control over the funds, having an unfettered right to withdraw the funds and the dividend income, thus petitioner must include the dividend income in his gross income under section 61(a). Section 61(a) states *471 that a taxpayer must include in gross income all income from whatever source derived, including dividends. Section 61(a)(7); Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). However, as we stated in Diamond v. Commissioner,56 T.C. 530, 541 (1971), affd. 492 F.2d 286 (7th Cir. 1974): We accept as sound law the rule that a taxpayer need not treat as income moneys which he did not receive under a claim of right, which were not his to keep, and which he was required to transmit to someone else as a mere conduit. [7]
Petitioner had been representing Shaul, a law client, regarding a contract and a subsequent lawsuit involving the ownership of the assets held in the account in question. Shaul had been holding stock certificates as collateral for a loan made to a James Grdina (Grdina). The terms of the oral loan agreement allegedly were that the certificates could be bought back within 30 days by Grdina; otherwise, thereafter ownership of the certificates *472 would revert to Shaul. By the end of the 30-day period the stock value had appreciated significantly. Shaul sought advice from petitioner regarding the steps to be taken to convert the ownership of the stock certificates from Grdina to Shaul. Petitioner introduced Shaul to a Frank Miller (Miller), a registered representative with E. F. Hutton who handled petitioner's personal stock account. Miller assisted Shaul in transferring the ownership of the stock certificates from Grdina to Shaul pursuant to a stock power agreement executed by Grdina. Subsequently, Shaul proceeded to sell some of the stock certificates through Miller and requested that petitioner hold a portion of the sales proceeds "in escrow." Miller opened an account (A290163313) in petitioner's name, separate from petitioner's personal account (A290198133), and deposited the stock sale proceed into it. It is unclear whether petitioner specified to Miller that the account was to be an escrow, however, the account ultimately was opened solely in petitioner's name without any indication of a trust or escrow. As such, petitioner had the power to withdraw the funds on his own accord. Shortly thereafter, Grdina initiated *473 a lawsuit against Shaul to recover the remaining stock certificates and the proceeds from the stock that had been sold. A court order was issued freezing the account which was in petitioner's name. In resolution of the lawsuit, a court order was issued requiring the proceeds of the accounting question to be disbursed to the attorney representing Grdina. In compliance with this order, $ 96,755 was disbursed, inclusive of the $ 14,087 in dividends which had accumulated throughout 1981. While there was no written escrow agreement between Shaul and petitioner, nor was the account titled to indicate an escrow, we believe that the facts in the record clearly indicate the intent of the parties to have an agency relationship. There was an apparent effort made to avoid commingling the funds with petitioner's personal assets. Although petitioner had the authority to make withdrawals against the account, this does not conclusively lead us to infer that he had a claim of right to the funds. Petitioner made no attempts to exercise control over the funds by altering the investments or making withdrawals. It was apparent at the time that the account was first opened, and at all times thereafter, *474 that petitioner would turn the funds in the account over to whomever received the favorable outcome of the dispute. Moreover, when the lawsuit between Shaul and Grdina was initiated and the account subsequently frozen by court order, petitioner no longer had dominion or control over the funds. The facts indicate that petitioner was merely acting as an agent for his client Shaul by maintaining the funds until the dispute over the rightful ownership of the funds was resolved. As a mere agent or intermediary collecting income for another, petitioner is not taxable on the income. See Hellman v. Glenn,36 F. Supp. 423 (W.D. Ky. 1941). Entertainment Promotion Firm-Schedule C Deductions
Petitioner filed with his 1981 Federal tax return a Schedule C for a firm known as ONIT on which he claimed $ 18,299 in business deductions. Respondent disallowed $ 13,364 of this amount for failure to substantiate that the expenditures were made for business purposes and that they constituted ordinary and necessary business expenses under section 162. The expense items disallowed were categorized as follows: legal and professional, travel and entertainment, parking, independent *475 contractor, and investments written off. At trial, respondent raised affirmatively a threshold issue regarding all of the Schedule C deductions, contending that ONIT operated as a corporation or association throughout 1981. As such, respondent contends, petitioner was precluded from claiming the business deductions on his personal tax return. Respondent has the burden of proof on this issue. Rule 142(a). ONIT was a business formed by petitioner in conjunction with a law client named Bob Lewis (Lewis) who was familiar with the field of entertainment management. The firm hoped to represent entertainers, rock groups, and models, along with producing and marketing video productions. The idea for the firm was first conceived in 1978 while petitioner was representing Lewis in a lawsuit against a rock group. ONIT began operations in early 1981. Petitioner contributed $ 8,000 to the firm's capitalization and an acquaintance of petitioner's by the name of Ralph Bevilaqua contributed an additional $ 5,000. Lewis handled all of the firm's recordkeeping. Originally, the parties involved with this firm intended to incorporate. Articles of incorporation were filed with the State *476 of Ohio and a $ 750 filing fee was paid. However, no further steps were taken to perfect incorporation. No stock was issued and no stockholder meetings were held. Allegedly the parties had intended to have two different classes of stock, voting and nonvoting, but no allowance had been made for this in the articles of incorporation. Petitioner was advised by his tax preparer during the following year that the incorporation of ONIT was never perfected and that petitioner would have to begin again if he wished to incorporate the firm. By that point in time the firm was in a date of disarray with all of its capital expended. With counsel from his tax preparer, petitioner decided it would be most favorable to treat ONIT as a proprietorship for tax purposes. All members of the firm agreed and no taxpayer besides petitioner claimed deductions for the business expenses of ONIT for taxable years 1981. Section 1701.04(D), Ohio Rev. Code Ann. (1985) states that the legal existence of a corporation shall begin upon the filing of the articles of incorporation. Steubenville Gas and Electric Co. v. Taylor,55 Ohio St. 61, 44 N.E. 513 (1896). *477 Thus, ONIT became a corporation under Ohio state law upon the initial filing of the articles of incorporation and no further steps were required to prefect incorporation. Petitioner argues that stock certificates were never issued and therefore the corporation did not exist. This argument fails. Section 1701.09(A), Ohio Rev. Code Ann. (1985) states that "After the articles have been filed, the incorporators or a majority of them shall receive subscriptions for shares at such time and place as they may determine." However, section 1701.09(D), Ohio Rev. Code Ann. (1985) clarifies that the "failure of incorporators of a corporation formed or attempted to be formed * * * to file in the office of the secretary of the state a certificate of subscription (for initial shares) required by such laws to be filed does not make the existence of said corporation or any of its acts subject to question." The incorporators of ONIT had the option to determine when the initial shares would be subscribed, but this decision would not affect the fact that the corporation became a legal entity at the time *478 that the articles of incorporation were filed. Any statutory conditions under state law that relate to the right to engage in business and that are to be performed after the corporation has been formed are conditions subsequent. Although noncompliance with those conditions subsequent may give the state the right to proceed to cancel the corporate charter, such noncompliance does not affect the legal existence of the corporation absent any such state action. Moline Properties, Inc. v. Commissioner,319 U.S. 436 (1943). Moreover, the failure to observe corporate formalities has no bearing upon a firm's classification as a corporation. Helvering v. Coleman-Gilbert Associates,296 U.S. 369 (1935); Helvering v. Combs,296 U.S. 365 (1935). Thus, the failure of ONIT to take steps such as issuing stock or holding board of directors meetings, even if required by state law, did not affect the legal existence of ONIT as there is no evidence that the corporate charter was revoked by the state. See Giant Auto Parts, Inc. v. Commissioner,13 T.C. 307, 317 (1949). *479 Once a taxpayer has complied with state laws governing the creation of a corporation, a separate entity comes into being, be it de jure or de facto, which will not be ignored for Federal tax purposes so long as its creation is followed by business activity other than tax avoidance. Moline Properties, Inc. v. Commissioner, supra. ONIT did conduct business in 1981 and there is no evidence that the corporation was designed to be a mere tax avoidance scheme. Although many of ONIT's business ventures were unsuccessful, including the "launching" of several rock bands and a model, ONIT did report income of $ 950 resulting from a successful commercial video production. We find that ONIT was a corporation under Ohio state law and recognize it as a corporation for Federal Tax purposes accordingly. [8] As such, a separate corporate tax return should have been filed for ONIT. Section 6012(a)(2); section 1.6012-2(a), Income Tax Regs. Therefore, petitioner was not entitled to claim any Schedule C deductions attributable to ONIT on his personal tax return. *480 We note that had respondent failed to meet his burden of proof on this threshold issue, petitioner would still not be entitled to deduct the $ 13,364 that had been disallowed by respondent due to lack of substantiation. Petitioner failed to produce any records to substantiate the expenses in question, and only offered the vague testimony of his business partner in an attempt to corroborate petitioner's own self-serving testimony. As such, petitioner did not meet his burden of proof. Additions to Tax
The final issue for decision is whether petitioner is liable for additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. Respondent has the burden of proof since he raised this issue affirmatively at trial. Rule 142(a). Section 6653(a)(1) imposes a five percent addition *481 to tax on any underpayment of tax that is due to negligence or intentional disregard of rules and regulations. Additionally, section 6653(a)(2) provides for an addition to tax in an amount equal to 50 percent of the interest due on that portion of the underpayment that is attributable to negligence or intentional disregard of rules and regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985); Marcello v. Commissioner,380 F.2d 499, 507 (5th Cir. 1967), affg. a Memorandum Opinion of this Court. We also consider the experience and knowledge of the individual taxpayer involved when determining whether a taxpayer was negligent or intentionally disregarded rules and regulations. See Fihe v. Commissioner,265 F.2d 511, 513 (9th Cir. 1958), affg. a Memorandum Opinion of this Court. The failure to maintain books and documents necessary to form a rational basis for expenses deducted constitutes negligence subject to additions to tax. Marcello v. Commissioner, supra. *482 Similarly, in Cobb v. Commissioner,77 T.C. 1096, 1101-1102 (1981), affd. 680 F.2d 1388 (5th Cir. 1982), we held that the taxpayer, as an attorney, should have exercised greater care when attempting to take deductions for expenses for which he maintained no records. As an attorney, petitioner is held to a similar standard. In this case we have found a consistent lack of accurate recordkeeping by petitioner by which to form a rational basis for the expenses that he deducted: -- When a successful parent intends to take dependency exemptions for his children by establishing that he satisfied one of the exceptions of section 152(e), it is rudimentary that he present some record of the amount of support he actually provided. Yet petitioner made no effort whatsoever to provide such a record. -- Petitioner attempted to deduct $ 4,500 as a theft loss based upon the alleged cost basis of gold clubs purchased by petitioner for resale. However, petitioner was unable to produce any records by which to establish this cost basis. -- In considering the evidence provided by petitioner to justify the business expense deductions for his law practice, there *483 did appear to be some effort to maintain accurate records. However, back-up receipts claimed to have been maintained for such items as travel and entertainment expenses were unavailable at trial. Moreover, petitioner testified that no records were maintained for the business use of his auto, nor for expenses deducted as business dinners eaten with clients. Rather, the figures on the tax return for these expenses represented gross estimates made at the time of tax preparation. -- Similarly, although our decision is such that we are not required to examine with specificity the Schedule C deductions claimed by petitioner for a firm known as ONIT, we note that petitioner did not present any records of this firm to substantiate the expenses. When questioned about the whereabouts of the firm's records, petitioner explained that the records were unable to be located after they had been moved from several venues. This evidences a lack of due care. Respondent has shown by a preponderance of the evidence that petitioner was negligent in maintaining proper records to provide a reasonable basis on which to calculate deductions taken. Accordingly, petitioner is liable for additions to *484 tax under sections 6653(a)(1) and 6653(a)(2) attributable to this negligence. To reflect the concessions of the parties and the foregoing holdings, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. We received this over respondent's hearsay objection under Fed. R. Evid. 804(b)(3), after ascertaining that the witness was unavailable within the meaning of Fed. R. Evid. 804(a)(5)↩. 3. At trial both parties agreed that petitioner was entitled to the following Schedule C deductions attributable to the law practice that had been disallowed in the deficiency notice: $ 555 for law practice seminar expenses, $ 4,430 for insurance expenses, and $ 1,300 for automobile depreciation. This depreciation figure is based on a concession that petitioner used his auto only 50 percent for business rather than 100 percent. Additionally, petitioner conceded that he did not have ample substantiation to entitle him to deduct $ 1,850 for car and truck expenses, nor to deduct $ 5,027 for miscellaneous travel and entertainment expenses. Respondent had disallowed a $ 3,433 deduction labeled "Miscellaneous Client Costs." Prior to trial, respondent had conceded $ 1,433 of this amount, thus $ 2,000 of the deduction remained at issue. At trial respondent stipulated that petitioner is entitled to an additional amount of $ 435, thereby allowing petitioner a total deduction of $ 1,868 for miscellaneous client costs; petitioner has conceded the remaining $ 1,565. ↩
4. Cf. Love Box Co. v. Commissioner,T.C. Memo. 1985-13, affd. 842 F.2d 1213, 1216↩ n. 3 (10th Cir. 1988). 5. Petitioner changed lots mid-year, thus explaining why there were two different payees. ↩
6. Respondent initially had disallowed a margin interest deduction contributable to this account, but has since conceded the issue at trial. ↩
7. See also Parker v. Commissioner,T.C. Memo. 1985-263↩. 8. We note that the facts indicate that a Ralph Bevilaqua contributed $ 5,000 to the capitalization of ONIT in addition to the $ 8,000 contributed by petitioner. We find this to be further evidence that the firm was not operating as a sole proprietorship. ↩